# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 2:90CR00007-001 |
| v. | ) **OPINION AND ORDER** |
| ELIC L. GILLIAM, | ) By: James P. Jones |
| | ) United States District Judge |
| Defendant. | ) |

*Brian J. Beck, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

Elic L. Gilliam, age 84, is currently serving a lengthy prison sentence imposed by a judge of this court in 1991 for offenses related to growing and distributing marijuana. He now moves for sentence reductions pursuant to Amendments 782 and 516 to the U.S. Sentencing Guidelines Manual ("USSG"), USSG § 1B1.10, and 18 U.S.C. § 3582(c)(2). Gilliam is eligible for a sentence reduction under both Amendments 782 and 516. Without any objection by the government, and because a reduction pursuant to Amendment 516 would result in Gilliam's immediate release, I will grant his motion on that basis.

I.

On August 19, 1991, Gilliam was sentenced to 365 months imprisonment, along with several shorter concurrent sentences, for the offenses of conspiracy in

money laundering in violation of 18 U.S.C. § 371, money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) & (B)(i)-(ii), conspiracy with intent to distribute marijuana in violation of 21 U.S.C. § 846, possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). These convictions stemmed from a conspiracy between Gilliam and his son, Roy Lee Gilliam, to grow large amounts of marijuana on their farms in Oregon and Virginia. *See United States v. Gilliam*, 513 F. Supp. 2d 594, 596 (W.D. Va. 2007). The Gilliams were indicted following a search of the two farms, during which law enforcement officers discovered evidence of a harvest of more than 3,000 marijuana plants, 127 pounds of marijuana, over $100,000 in cash, triple beam scales, and drying lights, among other evidence. *Id.* The officers also found eleven grams of cocaine. Elic Gilliam denied any involvement with the grow operation, but was convicted by a jury.

At sentencing, the court computed Gilliam's term of imprisonment using the 1990 Guidelines, as follows. Counts One and Two, conspiracy in money laundering and money laundering, were grouped pursuant to USSG § 3D1.2(d), and yielded a Base Offense Level of 23 under § 2S1.1(a)(1). With enhancements for special offender characteristics, value of the funds, and role in the offense,

together with a Criminal History Category of I, the Subtotal Offense Level for Group One (Counts One and Two) was 35.

Counts Three, Four, and Five, conspiracy to distribute marijuana, possession with intent to distribute marijuana, and possession with intent to distribute cocaine, respectively, were also grouped under USSG § 3D1.2(d), with the base offense level to be determined by the amount of substances involved. The court found that Gilliam had 3,000 marijuana plants and 298.53 kilograms of dry marijuana, along with 11 grams of cocaine. In calculating the total drug quantity, the court relied on the drug table in USSG § 2D1.1(c), which, at that time, provided that each marijuana plant should be treated as equivalent to 1 kilogram of dry marijuana. Thus, the total marijuana quantity, including the plants and dry marijuana, was 3298.53 kilograms. Section 2D1.1(c) further provided that, if marijuana and cocaine were involved, they should be converted to the equivalency of heroin in order to obtain the combined offense level. According to the Drug Equivalency Table in § 2D1.1(c), 1 gram of marijuana was equivalent to 1 milligram of heroin, resulting in a heroin equivalency of 3.29853 kilograms. As to the eleven grams of cocaine, 1 gram of cocaine was equivalent to 0.2 grams of heroin, resulting in a heroin equivalency of 2.2 grams or .0022 kilograms. Therefore, the total amount of marijuana and cocaine converted to the heroin equivalency — in other words, the total drug quantity for sentencing purposes — was 3.30073 kilograms of

heroin.  This quantity resulted in a Base Offense Level of 34.  With an upward adjustment of four levels for aggravating role in the offense, and a Criminal History Category of I, the Subtotal Offense Level for Counts Three, Four and Five (Group Two) was 38.

Finally, the court added an adjustment based on the multiple counts involved in order to determine the Combined Offense Level.  Pursuant to § 3D1.4(a), the court took the offense level of Group Two, being the higher offense level, and increased that offense level by two units — one unit for Group Two, as the highest offense level, and one additional unit for Group One, being three levels less serious than Group Two.  Therefore, the Combined Offense Level — and Total Offense Level for sentencing purposes — was 40, resulting in a guideline range of 290 to 365 months.  The court sentenced Gilliam to the high end of the guidelines range, 365 months, as to Count Three (conspiracy to distribute marijuana), based on Gilliam's role as leader in the conspiracy and the large sums of money involved.  Further, the court sentenced Gilliam to 20 years on Count One, 20 years on Count Two, 5 years on Count Four, and 20 years on Count 5, all to run concurrent with the term imposed on Count Three.

II.

Gilliam contends that he is eligible for a sentence reduction pursuant to Amendments 516 and 782 to the Guidelines.  Amendment 782 generally reduces

by two levels the offense levels assigned to the drug quantities described in U.S.S.G. § 2D1.1, and applies retroactively. However, the Commission required that any sentence reduction based on retroactive application of Amendment 782 not take effect until November 1, 2015, or later. Therefore, offenders affected by the retroactive application of Amendment 782 cannot be released before November 1, 2015.

By contrast, Amendment 516, which retroactively altered the drug table conversions for marijuana plants, became effective on November 1, 1995. USSG App. C, amend. 516. A sentence reduction on this basis would thus result in Gilliam's immediate release. Prior to Amendment 516, each marijuana plant was treated as the equivalent of one kilogram of dry marijuana if there were more than 50 plants involved, as seen in Gilliam's original sentence calculation. *See* USSG § 2D1.1(c) (Nov. 1, 1990). Since Amendment 516 took effect, each marijuana plant has been treated as the equivalent of 100 grams of dry marijuana, unless the actual weight of the plants is greater. *See* USSG § 2D1.1(c), n.(E) (Nov. 1, 2014).

Before granting a sentence reduction pursuant to a guidelines amendment, the court must engage in a two-step inquiry: (1) determine the scope of reduction authorized by § 3582(c)(2) and USSG § 1B1.10, and (2) determine whether a reduction is warranted in light of the factors listed in § 3582(a). *Dillon v. United States*, 130 S.Ct. 2683, 2686 (2010). As to the first step, there is no dispute that

Gilliam is eligible for a reduction pursuant to Amendment 516. Indeed, Gilliam's son, who was convicted of offenses as part of the same conspiracy, received a sentence reduction pursuant to Amendment 516 in 2007. *Gilliam*, 513 F. Supp. 2d at 598.

In determining Gilliam's amended guideline range, § 1B1.10(b)(1) instructs that "the court shall determine the amended guideline range that would have been applicable to the defendant if [Amendment 516] . . . had been in effect at the time the defendant was sentenced." Further, "the court shall substitute only the [amended guidelines] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Id.* Had Amendment 516 been in effect when Gilliam was sentenced, the 3,000 marijuana plants would have been treated as 300 kilograms of dry marijuana instead of 3,000 kilograms. With the 298.53 kilograms of dry marijuana, the total marijuana weight would have been 598.53 kilograms, equivalent to 0.59853 kilograms of heroin. This quantity, together with the heroin equivalency of 0.0022 kilograms of cocaine, would yield a total drug quantity of 0.60073 kilograms or 600.73 grams of heroin, which would have resulted in a Base Offense Level of 28 under § 2D1.1(c) of the 1990 Guidelines. With an upward adjustment of four levels for role in the offense and a Criminal History Category of

I, the Subtotal Offense Level for Counts Three, Four and Five (Group Two) would have been 32.

Finally, I must determine what the Combined Offense Level would have been, given a Subtotal Offense Level of 35 for Counts One and Two (Group One). Pursuant to § 3D1.4(a), Group One would receive one unit as the highest offense level, and Group Two would receive an additional unit since it was three levels less serious than Group Two. Adding two levels pursuant to § 3D1.4 would result in a Total Offense Level of 37, which, with a Criminal History Category of I, would have yielded a guideline range of 210 to 262 months, as opposed to Gilliam's original guideline range of 292 to 365 months. Thus, Amendment 516 has the effect of lowering Gilliam's amended guideline range, making him eligible for a sentence reduction. *See* § 1B1.10(a)(1).

Of course, that is not the end of the inquiry. "Whether to reduce a sentence and to what extent is a matter within the district court's discretion." *United States v. Smalls*, 720 F.3d 193, 195 (4th Cir. 2013). The court may reduce the term of imprisonment of a defendant made eligible under § 1B1.10, "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(2). In addition to the § 3553(a) factors, the court may consider public safety concerns as well as the defendant's post-sentencing conduct. USSG § 1B1.10 cmt. 1(B) (ii), (iii).

The government does not oppose a full sentence reduction for Gilliam, and I am persuaded that the factors in this case favor a sentence at the low end of the amended guideline range. Most compellingly, Gilliam is 84 years old, and is therefore unlikely to recidivate at this point in his life. *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) (citing studies showing that "the risk of recidivism is inversely related to an inmate's age"). Gilliam had no criminal history prior to this offense, which further indicates a low recidivism risk. Further, Gilliam is currently being housed at a low-security federal facility, and his record does not indicate any serious disciplinary problems. (Progress Rep. 14, ECF No. 55-4.) Finally, Gilliam has release plans to live either with his son or a friend, both of whom have written that they will assist him upon release. (Letters, ECF No. 55-2.)

Given these factors, a sentence of 210 months would appropriately balance the seriousness of Gilliam's offense conduct with his age, good behavior while imprisoned, and low risk of recidivism upon release. Due to Gilliam's concurrent sentences, his total imprisonment term cannot be reduced below 240 months. Since Gilliam has already served 288 months, however, application of Amendment 516 makes him eligible for immediate release.[1]

---

[1] Application of Amendment 782 would also make Gilliam eligible for release, although not until November 1, 2015.

III.

For the stated reasons, the Motions for a Sentence Reduction (ECF Nos. 50, 54, 55) are GRANTED. A separate Order reducing the sentence shall be entered herewith. The reduction will be stayed for 14 days in order to allow the Bureau of Prisons adequate time to arrange for the defendant's post-release placement on supervision.

It is so **ORDERED**.

ENTER: July 17, 2015

/s/ James P. Jones
United States District Judge

-9-

Case 2:90-cr-00007-JPJ   Document 56   Filed 07/17/15   Page 9 of 9   Pageid#: 174